# In the Matter of the Will and Estate of Kelly Vail, Deceased

## Palmer *v.* Habig

No. 40136 May 7, 1956 87 So. 2d 68

*Byrd, Wise & Smith,* Jackson, for appellant.

*Barnett, Jones & Montgomery,* Jackson; *Vincent J. Brocato,* Clarksdale, for appellee.

HOLMES, J.

This appeal presents for solution the question of the proper construction to be given certain provisions of the last will and testament of Kelly Vail, deceased.

Kelly Vail died on May 3, 1954. At the time of his death, he and M. H. Caldwell, Jr., were equal partners composing the partnership firm of Caldwell Culvert Company. He left a holographic will bearing date of September 14, 1950 at the top and September 14, 1951 at the bottom, wherein he undertook to dispose of his interest in the Caldwell Culvert Company. This will was duly admitted to probate as his last will and testament, and Wilburn Buckley qualified as executor, pursuant to his appointment in the will. The widow of the testator filed her renunciation of the will and elected to take her one-half interest in the estate, there being no children.

The articles of partnership entered into between Kelly Vail and M. H. Caldwell, Jr., under date of July 1, 1950, provided, among other things, the following:

"Upon the death of either partner, his executor or administrator and others interested in his estate shall be obligated to sell all of his interest in the partnership and its property and assets to the surviving partner, and the surviving partner shall be obligated to purchase the same upon the following terms and conditions," etc.

Pursuant to the foregoing provisions of the articles of partnership, and by the authority of the chancery court, M. H. Caldwell, Jr., the surviving partner, purchased and was conveyed the interest of his deceased partner in the partnership for the sum of $106,328.52, payable in four equal annual installments beginning May 3, 1954, bearing interest at the rate of four percent per annum, evidenced by notes secured by a deed of trust on all of the property and assets of Caldwell Culvert Company.

It is conceded that upon the sale of the testator's partnership interest the parties succeeded to the same character and quantum of interest in the notes as they had in said partnership interest.

The provisions of the will presented for construction are as follows:

"To my good and loyal Friend Beatrice Martin Habig of Jackson, Miss. All my right-title and interest in notes due me by M. H. Caldwell, Jr. Jackson Miss—J. A. Kerr & O. H. Kerr of Jackson Miss, Meeks Watkins & J Fowler Jackson Miss—Louis C. Poole of Jackson Miss. also to Beatrice Martin Habig Eighty (80) percent of my one half interest in the Caldwell Culvert Co Jackson Miss— provided that never at any time shall her son William P Habig be associated with the Caldwell Culvert Co in any capacity—as I believe him to be a person who is very untrust worthy, in the event this wish is not fully complyed with all interest in the Caldwell Culbert Co shall revert to my nephew Robert Palmer of Springville Ari-

zona, also to Robert Palmer all my personal belongings of which a list will be attached.—

"To L C Poole Jackson Miss

"The remaining Twenty percent (20) of my one half interest in the Caldwell Culvert Co.

"This bequest of my one half interest in the Caldwell Culvert Co to Beatrice Habig and L C Poole is made with the following provision to wit—That M. H. Caldwell Jr shall have the active management of the company and in the event that Beatrice Habig or L C Poole should desire to sell or dispose of their respective interests in the Caldwell Culvert Co. that M. H Caldwell Jr shall have the right of refusal of their interest at the prevailing book value of their respective interests in the Caldwell Culvert Co as of the date they desire to dispose of same—also Beatrice Habig shall assist M H Caldwell Jr. financially in the conduct of the Caldwell Culvert Co from the revenue or principal of the notes bequethed to her on Page Two of this instrument & will also upon the death of Beatrice Habig all remaining interests of any nature shall revert to Robert Palmer of Springville Arizona. . . ."

The contest is between Robert Palmer, who is the appellant here, and Mrs. Beatrice Martin Habig, who is the appellee here. Robert Palmer is a nephew of the testator. Mrs. Habig is not related to the testator and is referred to in his will as "my good and loyal friend." Mrs. Habig, whose residence is given in the will as Jackson, Mississippi, and Robert Palmer, whose residence in the will is given as Springville, Arizona, are neither related nor acquainted.

The question presented is whether under the quoted provisions of the will Mrs. Habig takes a fee simple title to forty percent (40%) of the testator's one-half interest in the partnership, and is, therefore, vested with the absolute right to forty percent of the notes rep-

resenting the proceeds of the sale of such interest, or whether her rights are that of a life tenant only, with no right to encroach upon the corpus and with remainder over to Robert Palmer.

The specific question is whether the words "upon the death of Beatrice Habig all remaining interest of any nature shall revert to Robert Palmer," as used in the will, were intended by the testator to mean all interest in the *partnership* remaining in Mrs. Habig at the time of her death, or all interest in the *notes* remaining in Mrs. Habig at the time of her death.

It is the contention of the appellant that Mrs. Habig was vested with a life tenancy only, and it is sought by this proceeding to have the will so construed, and to require of Mrs. Habig bond or security for the protection of the appellant's asserted rights as a remainderman in the principal or corpus of the notes.

On the other hand, the appellee, Mrs. Habig, contends that she acquired under the will a defeasible fee, that is to say, that she acquired an estate in fee simple that was liable to be defeated upon the happening of two contingencies—one, that Mrs. Habig's son, William P. Habig, should never be permitted to become associated with the Caldwell Culvert Company in any capacity, and the other, that Mrs. Habig held any remaining interest in the Caldwell Culvert Company at the time of her death. It is further the contention of the appellee that the happening of both of said contingencies has now become impossible because of the sale to M. H. Caldwell, Jr., of the testator's interest in the partnership, and that, therefore, the appellee's defeasible or determinable or determinable fee acquired under the will has been converted into an estate in fee simple.

The chancellor upheld the contentions of the appellee, and announced his conclusions as follows:

"Therefore, it is the opinion of this Court that the said Mrs. Beatrice Martin Habig is the holder in fee

simple of eighty percent (80%) of the proceeds of the sale of the one-half (½) interest of the testator, Kelly Vail, in and to Caldwell Culvert Co. resulting from the sale of said interest to M. H. Caldwell, Jr., subject, however, to the limitations and implications of the law under and pursuant to the renunciation of the said Last Will and Testament of Kelly Vail, deceased, by his widow, Mrs. Nell Vail.

"That the said Robert Palmer has no vested or contingent remainder interest in the proceeds of the sale of the one-half (½) interest of the testator, Kelly Vail, in Caldwell Culvert Co. and, therefore, is entitled to no relief under the Prayer of his Cross-Bill."

The chancellor entered his decree accordingly, and it is from this decree that the appellant, Robert Palmer, has prosecuted this appeal.

It appears to be the general rule that if the happening of the event on which an estate is to be determined becomes impossible, it is converted into an estate in fee simple. In 31 C.J.S., Estates, page 23, it is said: "If the happening of the event on which the estate is to be determined becomes impossible, it is converted into an estate in fee simple."

Of course, if the will is to be construed in accordance with the appellee's contention, the happening of both contingencies has now become impossible because of the sale of the testator's interest in the partnership to M. H. Caldwell, Jr., and the appellee's defeasible fee has become converted into an estate in fee simple. There is no difficulty about the contingency based upon the association of appellee's son with the Caldwell Culvert Company. The problem arises in determining whether the testator intended to create a remainder interest in appellant in the event of appellee's death while owning any interest in the partnership, or while owning any interest in the proceeds of the sale of the testator's partnership interest. In solving this problem, we must con-

sider the language of the will in the light of the circumstances surrounding the testator at the time the will was executed.

 It becomes important in construing the will to consider the relationship of the parties to enable the Court to view the language of the will from the attitude of the testator. 57 Am. Jur., Wills, Sec. 1101.

The appellant was the nephew of the testator. The appellee was his "good and loyal friend." This designation of the appellee by the testator would indicate that he recognized the ties of a close relationship and was desirous of rewarding her for her loyalty and friendship. That he preferred her over his nephew as one of the objects of his bounty is made manifest by the lavish provision which he made for her in his will, as compared to the meager provision which he made for his nephew. Regardless of the character of the estate which he intended to bequeath to the appellee in his partnership interest, he fixed her participation therein at eighty percent, or nearly the whole of it. The total value of this interest developed to be $106,328.52. In addition, the testator bequeathed to the appellee unconditionally certain notes which are not in dispute. The record discloses that the total net distributive value of the appellee's undisputed share under the will amounts to $23,400.85, while the total net distributive value of the appellant's undisputed share under the will amounts to $965.74.

 Bearing in mind the testator's attitude toward the appellant and the appellee respectively, as revealed by the foregoing facts, we come to the question of the character of the estate bequeathed to the parties respectively by the language in the will. It has been said that in the construction of a will, the court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. Shackleford v. Dobbs, 216 Miss. 75, 61 So. 2d 669. Our task, therefore, is to ascertain the meaning of the lan-

guage which the testator used. In undertaking to construe the language of the will before us, we are guided by well recognized rules and principles. █ One of these is that the prime inquiry is the intention of the testator, █ and another is that life tenancies are not favored. In Re Raworth's Estate, 211 Miss. 780, 52 So. 2d 661. █ Still another well recognized principle is that an absolute devise may not be reduced or diminished to a life estate by any succeeding language which is inferior in clarity and certainty to the devising clause. Frierson v. Moorhead, 211 Miss. 811, 55, So. 2d 925; Harvey v. Johnson, 111 Miss. 566, 71 So. 824; Fox v. Merchants Bank and Trust Company, 155 Miss. 188, 124 So. 321.

It appears reasonably clear that the testator in the outset made an absolute bequest to the appellee of eighty percent of his one-half interest in the Caldwell Culvert Company, subject only to the condition that the appellee's son, William P. Habig, should never be associated with the Caldwell Culvert Company in any capacity, and providing that in the event of the violation of such condition, all interest, that is to say, all interest of the appellee, in the Caldwell Culvert Company should revert to the appellant. This is borne out by a further provision of the will vesting in the appellee or L. C. Poole, to whom the testator had bequeathed the remaining twenty percent of his partnership interest, and whose fee simple title thereto is not questioned, the right to sell and dispose of their respective interests in the Caldwell Culvert Company, subject only to the right of refusal to be accorded M. H. Caldwell, Jr. It is argued by the appellant, however, that no significance is to be attached to the granting of the right to sell for the reason that the articles of partnership obligated the estate of the deceased partner to sell and the surviving partner to buy the interest of the deceased partner. We think that it is manifest that the testator contemplated that the sur-

viving parner, for financial or other reasons, might not fulfill his obligation to buy or that the legatees might relieve him of such obligation. The testator's main concern seemed to be that the appellee's son should never at any time be associated with the Caldwell Culvert Company in any capacity. Of course, such occurrence became impossible upon the purchase by M. H. Caldwell, Jr., of his deceased partner's interest.

It appears from the language of the will that the testator had a keen pride and interest in the preservation of the Caldwell Culvert Company, and that he contemplated that the appellee, in the event the surviving partner did not buy the deceased partner's interest, would retain a part or the whole of the partnership interest bequeathed to her. He provided that M. H. Caldwell, Jr., should have the active management of the company and that the appellee should assist him financially "in the conduct of the Caldwell Culvert Company," even from the revenue and principal of the notes which he had bequeathed to her unconditionally. If the testator had been contemplating that M. H. Caldwell, Jr., would purchase the deceased partner's interest and thereby become the sole owner of the partnership, it would have been unnecessary for the testator to provide that M. H. Caldwell, Jr., should have the active management of the Company. Clearly it appears from this language of the will that the testator must have contemplated that the appellee would retain some interest in the partnership. The only restriction upon the appellee's retention of an interest in the partnership was that the appellee's son should never become associated with the company. The happening of this contingency having become impossible, the defeasible fee vested in the appellee has become absolute unless the absolute bequest has been reduced or diminished to a life estate by the testator's succeeding language reading "upon the death of Beatrice Habig all remain-

ing interest of any nature shall revert to Robert Palmer of Springville, Arizona.''

It is the contention of the appellant that the language just quoted creates a life estate in the appellee with remainder in the appellant as to the notes representing the proceeds of the sale of the testator's partnership interest. We do not think that this construction of the will is maintainable. Nowhere in the provisions of the will under review has the testator mentioned the proceeds of the sale of his partnership interest, or in any manner directed the disposition thereof, or how the same should be dealt with. In the clause containing the language ''upon the death of Beatrice Habig all remaining interests of any nature shall revert to Robert Palmer,'' the testator is dealing with the *Caldwell Culvert Company and interests therein.* He mentions the bequest of *my interest in Caldwell Culvert Company.''* He provides that in the event Beatrice Habig or L. C. Poole should desire to sell or dispose of their respective *interests in the Caldwell Culvert Company,* M. H. Caldwell, Jr., shall have the refusal of their *interests* at the prevailing book value of their respective *interests in the Caldwell Culvert Company.* He then says that upon the death of Beatrice Habig all remaining interests of any nature shall revert to Robert Palmer. This language of the will indicates that the testator did not have in contemplation the proceeds of the sale of his partnership interest, but had in mind only the appellee's remaining interest in the partnership at the time of her death.

It is argued by the appellant, however, that the testator manifestly intended that the appellee's son should not come into the enjoyment of any of his property by inheritance or otherwise from his mother, Mrs. Habig. This argument is refuted by the undisputed fact that the testator bequeathed to the appellee unconditionally a substantial share of his estate of the net distributive value of $23,400.85, which might pass to the appellee's son by

inheritance or otherwise from his mother. It is apparent from the will that the testator's main concern was to prevent the appellee's son from having any association with the Caldwell Culvert Company because he regarded him an untrustworthy. There is nothing to indicate that the testator entertained any hatred or animosity toward the son. He simply did not want one whom he regarded as an untrustworthy person connected with the business of the Caldwell Culvert Company. It appears from the language of the will that the testator, in undertaking to create the remainder interest in the appellant, had in mind the remaining interest in the partnership held by Mrs. Habig at the time of her death and not the remaining interest held by her in the proceeds of the sale of the partnership interest bequeathed to her. This interpretation is consistent with the testator's express purpose to prevent appellee's son from becoming associated with the Caldwell Culvert Company, since the testator knew in reason that if Mrs. Habig died owning any interest in the partnership, there was likelihood that her son would succeed thereto by inheritance or otherwise, thereby becoming associated with the Caldwell Culvert Company. The testator undertook to prevent this by providing, as we interpret his language, that if Mrs. Habig owned any interest in the partnership at the time of her death, the same should revert to the appellant.

■■■ Viewing the case most favorably to the appellant, but bearing in mind, as we must, the well recognized principle that life tenancies are not favored, we are of the opinion that the language of the will relied upon by the appellant is not of sufficient clarity and certainty to reduce or diminish to a life estate the absolute bequest in the preceding devising clause of the will.

It is accordingly our conclusion that the appellee acquired under the will a defeasible fee in the partnership interest, liable to be defeated upon the happening of contingencies which have now become impossible of happen-

162

ing because of the sale of the testator's partnership interest, and that her defeasible fee has now become converted into an estate in fee simple. The chancellor so held, and we are of the opinion that he was correct.

Affirmed.

*McGehee, C.J.,* and *Roberds, Lee* and *Ethridge, JJ.,* concur.