295 So.2d 755 (1974)
Sally Ann Lewis MORRIS, Individually and as mother and next friend of William Helm Morris, et al.
v.
William Frank HARDIN et al.
No. 47376.
Supreme Court of Mississippi.
June 4, 1974.
*756 Frank O. Wynne, Jr., Robert G. Johnston, Cleveland, C.W. Dotson, Tuscola, Ill., for appellants.
W. Allen Pepper, Jr., Cleveland, Guthrie T. Abbott, University, for appellees.
INZER, Justice:
This is an appeal by Sally Ann Lewis Morris, Joe E. Morris, Jr., William Helm Morris, and Katherine Estelle Morris from a decree of the Chancery Court of the Second Judicial District of Bolivar County cancelling and removing as a cloud the claim of appellants to approximately 640 acres of land located in Bolivar County and confirming the title to the land in appellee William Frank Hardin. We affirm.
The claim of appellants and appellee to the land involved in this case arises out of the will of Roy E. Helm, who died on May 6, 1937. The first dispositive paragraph of the will devised the land in question to testator's wife, Edith C. Helm for her natural life. The next paragraph of the will devised a life estate to William Frank Hardin to take effect upon the death of his mother Edith C. Helm. The will then *757 made the following provisions relative to the land:
Upon the death of both the said Edith C. Helm and the said William Frank Hardin, I give and devise the remainder interest in said land unto Sally Lewis, who is the daughter of my niece, Sarah Jane [sic] Helm Lewis, and to the heirs at law of the said Sally Lewis, in fee simple.
If the said Sally Lewis should die prior to the death of either of the said Edith C. Helm or the said William Frank Hardin, then it is my will that the said land aforesaid become the property of the heirs at law of the said Sally Lewis upon the death of both the said Edith C. Helm and the said William Frank Hardin.
The will devised all other property to Edith C. Helm and appointed her executrix of the estate to act without bond or accounting for her actions to any court. After Mr. Helm's death, the will was admitted to probate in the Chancery Court of Bolivar County, and Mrs. Helm was appointed executrix. The estate was duly administered, and Mrs. Helm was discharged by a decree of the court dated December 18, 1937.
In July 1938 Cyril C. Lewis and Sarajane Lewis, parents of Sally Ann Lewis, filed a petition in the Chancery Court of Bolivar County alleging that the petitioners and their daughter were residents of the State of Illinois and that their daughter, who was then two years of age, owned a remainder interest in fee simple in the land in question. The petition also alleged that it would be the best interest of the minor that her interest in the land be sold for several reasons. The prayer of the petition was that Mrs. Sarajane Lewis be appointed guardian for her daughter. A decree was entered appointing Mrs. Lewis guardian, and she qualified by making bond. Letters of guardianship were then issued to her. Thereafter on October 13, 1938, the guardian filed a petition in accordance with Section 1883, Mississippi Code of 1930, seeking authority to sell the interest of the ward in the land in question. Cyril Lewis, father of the ward, Grover Helm, grandfather of the ward, and Edith C. Helm, great aunt by marriage of the ward, were made parties defendant to the petition. The defendants answered and joined in the prayer of the petition agreeing that it would be to the best interest of the minor that her interest in the land be sold. On October 25, 1938, a decree was entered adjudicating that the minor owned a fee simple remainder interest in the land and that it would be to her best interest that her remainder interest be sold. The clerk of the court was appointed special commissioner to sell her interest in the land, but the decree prohibited the commissioner from selling the interest of the minor for less than $2,000. After duly advertising the sale, the commissioner sold the interest of the minor at public auction to William Frank Hardin for $2,000. The sale was confirmed by the court, and the commissioner deeded the interest of the minor to William F. Hardin. Thereafter, Mrs. Sarajane Lewis qualified as guardian in the State of Illinois and filed her first and final account in the guardianship proceeding in this state. A decree was entered approving the final account and ordering the transfer of the funds to the Illinois guardianship. Upon transfer, the guardian in Mississippi was finally discharged.
On September 14, 1959, Sally Ann Lewis Morris, nee Sally Ann Lewis, filed a disaffirmance and renunciation of the sale of her interest in the subject land alleging that the sale was invalid for several reasons. At the time this instrument was filed, Mrs. Morris was over 23 years of age, married and had one child.
Mrs. Edith C. Helm died on May 5, 1956, and her son William Frank Hardin became the owner of the life estate and whatever interest he acquired by virtue of the commissioner's deed.
*758 This suit seeking to remove any claim of the defendants to the land described in the bill of complaint was instituted by William Frank Hardin, his wife, and children, although his wife and children actually own no interest in the land, against defendant Sally Ann Lewis Morris, her husband, Joe E. Morris, Jr., their two minor children, William Helm Morris, Katherine Estelle Morris, and any unborn children of the adult defendants. The bill alleged that the complainant William Frank Hardin had acquired the fee simple remainder interest of Sally Ann Lewis by virtue of the commissioner's deed and that said deed was valid in all respects and in compliance with the law. It further alleged that at the time of the filing of the disaffirmance and renunciation Sally Ann Lewis Morris was 23 years and 7 months of age and that she was barred by the virtue of Section 745 and 1388, Mississippi Code 1942 Annotated (1956) from asserting the claim to the property in question.
The defendants answered the bill of complaint alleging that the will of Roy E. Helm devised to Sally Ann Lewis Morris a contingent remainder interest in the property and her heirs born and unborn received alternative contingent remainder interest. The answer alleged that Edith C. Helm as executrix of the estate of Roy E. Helm owed a fiduciary duty to Sally Ann Lewis Morris which was violated. The answer also charged that the proceedings were tainted by fraud and wholly void, that the consideration paid at the 1938 sale was grossly inadequate, that William Frank Hardin was a party to the fraud, that the guardianship proceedings did not attempt to sell and convey the alternative contingent remainder interest of her heirs and that the claim of Sally Ann Lewis Morris to the property was not barred by the statute of limitations.
By way of a cross bill, Sally Ann Lewis Morris prayed that the 1938 guardianship sale be set aside and that the claim of William Frank Hardin to the remainder interest in the land be removed as a cloud on her title. She also prayed that the court adjudicate that she acquired a contingent remainder interest under the will and that if she does not survive William Frank Hardin, then at his death the remainder interest be vested in her heirs. The answer to the cross bill denied that either Sally Ann Lewis Morris or her heirs owned any interest to the property in question.
The court appointed an attorney as guardian ad litem for the minor defendants and the unknown, unborn and undetermined heirs of Sally Ann Lewis Morris.
Prior to the trial on the merits, the court held that the claim of Sally Ann Lewis Morris was not barred by Section 745 or 1388, Mississippi Code 1942 Annotated (1956).
The chancellor after hearing and considering the evidence, which we do not deem necessary to detail, rendered a written opinion wherein he decided all issues raised in the trial court and now raised on this appeal. The relief prayed for in the bill of complaint was granted, and a decree was entered cancelling the claim of the defendants to the land and confirming title to the land in William Frank Hardin against all defendants. It is from this decree that this appeal is prosecuted. Appellee has cross appealed from that part of the decree holding that the claim of Sally Ann Lewis Morris was not barred by the statute of limitations.
Appellants argue five propositions for the reversal of the decree of the trial court. It is first urged that the chancery court was wholly without legal authority to order the sale of the remainder interest in the land because there was no necessity pleaded or proved for the sale. We find no merit in this contention. The record in this case revealed that the sale of the interest of the minor was made in strict compliance with Section 1883, Code of 1930. This section provided that when it would be to the best personal interest of the ward or advantageous to the estate to *759 sell all or a part of the real estate, the parties could present a petition to the court for that purpose setting forth the reason why a sale would be beneficial to the ward. The statute authorized the court to order a sale when it was satisfied that the interest of the minor would be promoted by a sale of the land. We are in agreement with the chancellor that a sale under this section did not require a showing of necessity for the sale. The petition and decree ordering the sale met the requirements of the statute. Furthermore, an analysis of the reasons set forth in the decree make it apparent, if necessary, that the court could have determined that there was a necessity for the sale. The court found that the ward was then two years of age and would not receive any benefit from the land until the death of the two life tenants, one of whom was middle-aged but in good health, and the other being a young man, twenty-two years of age, with a life expectancy of over forty years. The court further determined that it was uncertain that the minor would survive either of the life tenants and that she might not derive any benefit from the land during her lifetime. The court further found that the land was encumbered by a deed of trust to the federal land bank for approximately $15,000 and in order to preserve the estates of interest in the land devised by the will that the indebtedness had to be paid as it became due in annual installments, that the taxes would have to be paid from year to year, and that the land be otherwise preserved and protected. The court further found that the ward Sally Ann Lewis had no other estate from which to make contributions for the purpose of conserving her interest. Under these circumstances it is obvious that the court knowing the conditions that existed in 1938 was not required to speculate that the interest of the minor in the land would be preserved and very properly found that it would be to the best personal interest and advantageous to her estate to sell her remainder interest in the land.
Under proposition II appellants urge that the trial court erred in upholding the sale because the same was totally against the will of the testator as expressed in his will. After a careful study of the provisions of the will we are in agreement with the chancellor that the will contains no prohibition against alienation nor is there anywhere in the will an expressed intention by the testator that the land should not be conveyed.
Appellants contend under Proposition III that the sale was tainted with fraud and for that reason cannot be upheld. We have carefully considered the argument of appellants relative to this point and have reached the decision that the chancellor correctly held that no fraud was practiced in the cause in which the interest of the minor was sold, and we concur in his opinion in this regard. It is contended among other things that there was conspiracy among Grover Helm, grandfather of the minor and William Frank Hardin and his mother Edith C. Helm to let William Frank Hardin acquire the interest of the minor in order that Grover Helm could control the proxy of Edith Helm and vote the bank stock which Edith Helm owned in a bank in Illinois. It is contended that Grover Helm sacrificed the interest of his granddaughter in order that he could continue to control the bank of which he was president.
This is rather strange accusation by Mrs. Morris in view of the evidence in this case. The evidence shows that Grover Helm was interested in his granddaughter and, in fact, was almost like a father to her. He was a good businessman, an experienced banker, a substantial landowner and familiar with the land in question. He no doubt thought that it was best interest of his granddaughter that her interest in the land be sold, and there is nothing in the evidence to indicate that there was any agreement between Grover Helm and Edith Helm concerning the bank stock owned by Edith Helm. Grover Helm was a moving spirit in the sale, but there is nothing to indicate that he had any motive *760 other than to act in the best interest of his granddaughter.
It is also argued that the low price paid for Sally's interest in the land was a strong indication of fraud. In determining this question, the chancellor correctly held that one must look at the question from the point of view of the land prices, economic conditions and the situations of the parties in the year 1938. The testimony in this case supports the finding of the chancellor that the purchase price paid for the remainder's interest was not grossly inadequate. Consequently, we cannot say that the chancellor was wrong, much less manifestly wrong.
Under Proposition IV it is contended that the sale cannot be upheld because the moving spirit in the sale was Edith C. Helm who, as executrix of the estate of Roy Helm, stood in a fiduciary relationship to the beneficiaries of the will. We find no merit in this contention. The title to the land in question passed to the devisee of the will upon the death of Ray Helm, and as executrix of the will, Mrs. Helm had nothing to do with the real estate. It is only when it is necessary to resort to real estate to pay the debts that the executor to a will owes any special duty to the devisees of the land devised by the terms of the will. Furthermore, Mrs. Helm was discharged as executrix of the will prior to the time any proceedings were begun to sell the remainder interest of Sally Ann Lewis, and certainly, she had no fiduciary relationship with Sally Ann Lewis after she was discharged as executrix. The proof does show that Mrs. Helm was interested in seeing her son acquire the remainder interest in the land and was a moving spirit in the purchase of the land by her son, but there is no evidence that the guardian who was the mother of the minor relied upon the advice of Edith C. Helm when she petitioned the court to order the sale.
Finally, appellants urge that the will did not give a remainder in fee simple in the land to Sally Ann Lewis but rather gave her a contingent or alternative remainder and that her heirs definitely had an interest in the land in question and that this interest has never been conveyed. This contention has caused us much concern, and in fact, except for this proposition, a written opinion in this case would not have been justified.
We have heretofore quoted the two paragraphs of the will principally involved on this question. The third dispositive paragraph provides upon the death of the two life tenants, "I give and devise the remainder interest in said land unto Sally Lewis, who is the daughter of my niece, Sarah Jane Helm Lewis, and to the heirs at law of said Sally Lewis, in fee simple." The chancellor was of the opinion that this paragraph standing alone clearly vested a remainder in fee in Sally Lewis. We are of the same opinion.
The fourth dispositive paragraph in question provides that if Sally should die prior to the death of either life tenant, "then it is my will that the said land aforesaid become the property of the heirs at law of said Sally Lewis." Appellants argue that in the event that Sally did not survive the life tenants it was clearly the intention of the testator for the property to go to her heirs. It is argued that the wording of this paragraph devised to the heirs at law of Sally a contingent remainder or alternative remainder or an executory devise. The chancellor in his opinion pointed out that an absolute devise may not be reduced by succeeding language which is inferior in clarity and certainty to the devising clause, and mere implication is not sufficient. Citing Wheeler v. Williams, 235 Miss. 142, 108 So.2d 578 (1959), and Frierson v. Moorhead, 211 Miss. 811, 51 So.2d 925 (1951). In this connection, the chancellor pointed out that the will was generally carefully written and in the three *761 other paragraphs in which gifts were made the language is very positive, "give and devise", or "give, devise and bequeath." He concluded that if the testator had intended to give an estate to the heirs of Sally Ann instead of saying "then it is my will," he would have used the same positive language to make a devise to the heirs. He also noted that the fourth dispositive paragraph does not begin with the usual words of contrast which introduce a gift such as "provided however," or "but if" and is only a simple statement not visibly intended to contrast or conflict with the preceding paragraphs.
The chancellor also noted that Section 833, Mississippi Code 1942 Annotated (1956), provides that every estate conveyed shall be deemed a fee simple, if a lesser estate be not limited by express words or unless it clearly appears from the conveyance or will that a less estate was intended to be passed thereby and that the cases universally bear out this policy so that a fee simple is presumed unless the limitation on it is clear.
The chancellor concluded by stating that he found nothing in the wording of the will which indicated any intention of the testator to make a gift to the heirs of Sally Lewis who was less than one year of age when the will was written and just over the age of one year when the testator died.
Appellants contend that the construction of the will by the chancellor was contrary to our decision in Hemphill v. Miss. State Highway Comm'n, 245 Miss. 33, 145 So.2d 455 (1962), and that under this decision the heirs of Sally Ann Lewis Morris acquired at least an executory interest in the remainder and that this interest was not conveyed by the sale of Sally Ann Lewis' interest in the land. However, we are of the opinion that this case is distinguishable from the Hemphill case. In the first place, Hemphill involved the construction of a holographic will and a codicil written after the execution of the will. The will and codicil were written by a person unlearned in the law and apparently with very little education. Here we have involved only a will which apparently was drafted by a capable lawyer, who no doubt was drafting the will so as to carry out the intention of the testator. We pointed out in Hemphill, supra, that the construction of a will involves an attempt to discover what were the ideas existing in the mind of the testator and the determination of whether his intention was expressed in such a way as to give it legal effect and validity. Therefore, there are two elements involved in testamentary interpretation, external and internal. It originates with an intention that is perfected by expression. Therefore, the expression in the fourth dispositive paragraph involved becomes very important in this case. The fourth dispositive paragraph does not begin with the usual words of contrast, and it is only a simple statement apparently not intended to conflict with the preceding paragraphs. We are also in agreement with the chancellor that an important distinction in this case and the Hemphill case is that here we have a will with the three preceding dispositive paragraphs wherein gifts were made using very positive language such as, "give and devise" and "give, devise and bequeath," and instead of using these words in the fourth and final paragraph, the expression used is "then it is my will." In Hemphill, the testatrix in making the gifts used the expression "I want" in both the will and codicil. In Wheeler v. Williams, supra, the testator stated "I hereby give and bequeath unto my beloved wife, Frankie Williams, all my property." Then the second sentence of this item the testator stated that "It is my will and desire that my daughter, Lillie Williams, receive all property, personal and real, that her mother, Frankie Williams, have or possessed with at her death." We held that it was not the intention of the testator to vest a remainder interest in his daughter effective at the time of his death, *762 but merely meant that if his daughter was living at the time of the death of her mother, he wanted her to have all property possessed by her mother. We pointed out that the words, "it is my will and desire," were merely precatory as expressing his desire to the ultimate disposition of her property. It was also pointed out that in Frierson v. Moorhead, supra, this Court stated:
It is elemental that an absolute devise may not be reduced or diminished to a life estate by any succeeding language which is inferior in clarity and certainty to the devising clause. Mere implication is not enough. (211 Miss. at 819, 51 So.2d at 927)
It was also noted that in In Re Vale's Will, 228 Miss. 151, 158, 87 So.2d 68, 72 (1956), this Court said: "Still another well recognized principle is that an absolute devise may not be reduced or diminished to a life estate by any succeeding language which is inferior in clarity and certainty to the devising clause."
In view of these distinguishing factors, we are of the opinion that Hemphill is not controlling and that the chancellor correctly construed the will to mean that Sally Ann Lewis was vested with a fee simple remainder and that her heirs acquired no interest under the will.
For the reasons stated, we are of the opinion that this case must be and is affirmed on direct appeal. This affirmance on direct appeal renders moot the question raised on cross-appeal of whether the chancellor was in error in holding that the claim of Sally Ann Lewis Morris was not barred by the statute of limitations.
Affirmed on direct and cross appeals.
GILLESPIE, C.J., and ROBERTSON, WALKER and BROOM, JJ., concur.